UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12 CIV. 1345

_Anthony Bennett_

_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_New York Police Department_
_City of New York et al_
_Francis Zito Shied # 22_
_Brandy Chiu Shied # 30970_
_Julia London ESQ Assistant District Attorney_
_Willie Walker_
_Michael Hart_

_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**COMPLAINT**

under the
Civil Rights Act, 42 U.S.C. § 1983
(Prisoner Complaint)

Jury Trial: ☑ Yes   ☐ No

(check one)

RECEIVED
FEB 22 2012
PRO SE OFFICE

**I.    Parties in this complaint:**

A.    List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name    _Anthony Bennett_
             ID #    _11-A-1923_
             Current Institution    _Sing Sing Correctional Facility_
             Address    _354 Hunter Street Ossining New York 10562_

B.    List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

*Rev. 05/2010*    **0** 1

Defendant No. 1    Name _New York Police Department_    Shield # _____
                   Where Currently Employed _____
                   Address _123 Street 28 precinct New York City_
                   _Manhattan 10027_

Defendant No. 2    Name _City of New York et al_    Shield # _____
                   Where Currently Employed _____
                   Address _____

Defendant No. 3    Name _Francis Zito_    Shield # _22_
                   Where Currently Employed _28 precinct N.Y.C Manhattan_
                   Address _123 Street 8 ave_

Defendant No. 4    Name _Brandy Chiu_    Shield # _30970_
                   Where Currently Employed _28 precint N.y.c. Manhattan_
                   Address _123 Street 8 ave_

Defendant No. 5    Name _Julia London ESQ A-D-A_    Shield # _____
                   Where Currently Employed _____
                   Address _____

## II.    Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur? _____

B.    Where in the institution did the events giving rise to your claim(s) occur? _____

C.    What date and approximate time did the events giving rise to your claim(s) occur? _____
      _3-21-2010    7:5 Am_

Defendant NO 6   Name Willie Walker


Defendant NO 7   Name Michael Hart

D.    Facts: On 3-21-2009 it was a Satday in the morning about 7AM. I was on my way home. I was on 119St in 8AVE walk to 130St from 8AVE to Manhattan AVE made a right to get to my bldg. which is 124 manhatten AVE 565. On the way I was Stop by Willie Wal. he had some kind of African Cane or walking Stick with him he ask me did I live in the neighborhoor and I Said I did he then Said, no you don't you live in Grant projects I Said I don't So I Started walking towards my Bldy he was folliwing me then he Step in the Street a Car Stop two P.O got out of a unmake Car. P.O Zito and P.O Chiu P.O Zito Said What is going on, I Said this guy will not leave me the F--K alone P.O Zito was talking to willie walker. The Next thing I Know I was put in hand cuffs by P.O. Zito. I ask him what is going on what did I do he Said not one word by him He put me in the Car and drove to the 28 precinct While I Sat in the Car p.o Zito and Chiu got out and Started to talk, I could not hear all but I did hear Something about paper work. Sat in the Car for about 20 min then he Said Something about routine and I will be home Soon got in the 28 precinct and he Find a Crack pipe P.O. Zito then Said I got you, Then he try to get me to give him information and I Said about what I Said I don't Know what you are talking about, Then he Said Something about a line up and I Said What the F--K are you talking about a line up for What he Said auto Striping, he Check the computer and Seen that I had a prior Conviction So that were the lie Started to get bigger, What I mean if you look at my EXibit you will See what I'm talking about everybody part. Willie walker desciption EX 39 unknow Sex, Race, Age. Then you look at paper work and Statement in the hearing on the Trial Bureau Thirty Sheet. He Said two day later, D is

See a Attach paper 5-6

**What happened to you?**

**Who did what?**

**Was anyone else involved?**

**Who else saw what happened?**

## III.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. My freedon was taking from me

## IV.    Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

*Rev. 05/2010*

4

observed by AO and Walker at same location, looking into Cars, Walker confronts D and they get into verbal altercation, Where D ends up raising a Cane at Walker. D is arreste. All was Said in the ReMarks box. Then I was pick out of the line up by Michael Hart. EX 2 Michael Hart Said he call 911 and said he Filed a Complaint. Supporting Deposition, Look at EX-8 Stipulation N.y. C P. Dep does not have a record of a 911 Call made by Michael Hart on March 19, 2009, There is more but that is all I have of it

There is no paper work of any sort by Michael Hart and the ADA Know Know that there is no file complaint on 911 call there is none in the ADA Aps DA DataSheet. P.O 2.to go as fear as Saying AO obs D looking into a red jeep. How can he see me Looking in a red jeep wind he is driveing he said willie Walker told him about the break-in. P.O 2.to Told the judes that in the hearing. he was at the precinct wind you. look at the statement of willie Walker he said he Neva was at the precinct in the hearing January 26. 2010 ADA Ms London Said I belive the witness that they wanted to hear from and most interested in hearing from is Mr Hart Who was served a Subpoena back in December. He is not complying with the Subpoena.

5

She is ADA Ms London have call him numerous of time that it's not a request by me at this point it is a Court order She was going to have P.O Zito pick him up today officer Zito was never notified. The court said For the record, The People have rested in this Case. AS he understand the people wish to reopen the Case in order to Call Mr walker is that correct. Ms London that's Correct Judge Look at walker Statement Said he think one of the Sergeants call him EX-1 For Willie Walker EX 2 description Look at EX-3 The court were you at the precinct When they brought the defendant into the precinct. Walker Said no p.o. Zito Said he drove his own Car to the precinct walker also Said they told him to go home after her was Scuffling with then. Look at lon I wanted EX 40 Race unknow hain Stye unknow Skin tone unknow Weight O and EX-4 Walker said he told p.o Zito that he had filed a report and this looked like the description of the person that broke into his Car At Trial the jury find me Not Guilty.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

      Yes _____  No ___✓___

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____

_____

B.    Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

      Yes _____   No _____   Do Not Know _____

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

      Yes _____   No _____   Do Not Know _____

      If YES, which claim(s)? _____

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

      Yes _____   No _____

      If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

      Yes _____   No _____

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance? _____

      1.    Which claim(s) in this complaint did you grieve? _____

_____

      2.    What was the result, if any? _____

_____

      3.    What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process. _____

_____

_____

_____

_____

F.    If you did not file a grievance:

      1.    If there are any reasons why you did not file a grievance, state them here: _____

2.    If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any: _____

_____

_____

_____

_____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. _____

_____

_____

_____

_____

_____

_____

_____

**Note:**    You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

## V.    Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). *$1,500,000.⁰⁰ monetary and punitive damages for the lost of my freedom and for the false statement by P.O and witness false Arrest, false imprisonment, Malicious prosecution Liability*

**VI.    Previous lawsuits:**

On these claims

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____    No __✓__

B.    If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2.    Court (if federal court, name the district; if state court, name the county) _____
_____

3.    Docket or Index number _____

4.    Name of Judge assigned to your case _____

5.    Approximate date of filing lawsuit _____

6.    Is the case still pending? Yes _____    No _____
If NO, give the approximate date of disposition _____

7.    What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?) _____
_____
_____

On other claims

C.    Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?
Yes _____    No __✓__

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2.    Court (if federal court, name the district; if state court, name the county) _____
_____

3.    Docket or Index number _____

4.    Name of Judge assigned to your case _____

5.    Approximate date of filing lawsuit _____

6.    Is the case still pending? Yes _____    No _____
If NO, give the approximate date of disposition _____

*Rev. 05/2010*                                    9

7.    What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?)  _____

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _16_ day of _February_ , 20_12_

Signature of Plaintiff    _Anthony Bennett_

Inmate Number    _11-A-1923_

Institution Address    _Sing Sing Correctional_
_Facility Ossining N.Y_
_10562_

_____

**Note:**   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this _16_ day of _February_ , 20_12_ I am delivering this complaint to prison authorities to be mailed to the  *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:    _Anthony Bennett_



1

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF NEW YORK : CRIMINAL TERM JHO PART 37

3    - - - - - - - - - - - - - - - - - X  Indictment No.

4    PEOPLE OF THE STATE OF NEW YORK            1914/09
              - against -

5

6    ANTHONY BENNETT,                          HEARING

7                      Defendant.

8    - - - - - - - - - - - - - - - - - X

9    100 Centre Street
     New York, New York

10   Date Held: DECEMBER 15, 2009

11   B E F O R E:

12              HONORABLE HERBERT J. ADLERBERG,

13                      Judicial Hearing Officer.

14   A P P E A R A N C E S:
          ROBERT M. MORGENTHAU, ESQ.,
15        DISTRICT ATTORNEY, NEW YORK COUNTY
          by: J. LONDON, ESQ.,
16        Assistant District Attorney
          For the People
17
          NEIGHBORHOOD DEFENDER SERVICES OF HARLEM
18        by:  ANNALISA MIRON, ESQ.,
          Attorney for Defendant
19

20
                        Anne Love, C.S.R.,
21                      Senior Court Reporter

22

23

24

25

⑤

AML    12-15-09    BENNETT / Zito-peo-direct

1          THE COURT:  Indicating the defendant.

2      Q    Please describe the circumstances leading

3  to the arrest of this defendant?

4      A    All right.

5          Approximately 7:30 in the morning, on One

6  Hundred twenty-third and Manhattan Avenue, two

7  individuals, the defendant and an unknown, at the

8  time his name was Willy Walker, were in a verbal

9  dispute.

10          The defendant raised his cane in a

11  menacing gesture like he was going to hit him.

12          At that point they were placed, he was

13  placed under arrest for disorderly conduct.

14      Q    At the scene did the defendant say

15  anything to you?

16      A    At the scene, as soon as we, on approach,

17  got out of the car, out of the vehicle, were in

18  uniform, the defendant was yelling at the other

19  individual, get the, exact words were, leave me the

20  F alone, if I'm correct in saying that, get the F

21  away from me.

22      Q    Did he say anything else that you recall?

23      A    Not that I recall.

24          THE COURT:  You say we got out of the

25      car.

AML     12-15-09     BENNETT / zito-peo-direct

1            who is we?

2            THE WITNESS:  Me and my officer,

3     partner, Officer Chiu.  C H I U.

4            Q     Where was that statement made?

5            A     At the scene.  One Hundred twenty-third

6     and Manhattan Avenue.

7            Q     When was the statement made?

8     Approximately?

9            A     Approximately 7:28.

10           Q     Approximately when was the arrest made?

11           A     7:30.

12           Q     Was the defendant under arrest at the time

13     he made the statement?

14           A     No.

15           Q     What, if any, questions did you ask the

16     defendant before he made that statement to you?

17           A     None.

18           Q     Did you ask him anything to elicit the

19     statement?

20           A     No.

21           Q     Did you say anything to the defendant

22     before he made the statement?

23           A     No.

24           Q     Did you make any promises to the defendant

25     prior to his making the statement?



AML    12-15-09    BENNETT / Zito-peo-direct

1    A    No.

2    Q    What, if any, threats did you make to the

3    defendant prior to his making the statement?

4    A    None.

5    Q    Did you use any force to elicit the

6    statement?

7    A    No.

8    Q    Was the defendant handcuffed when he made

9    the statement?

10    A    No.

11    Q    Was your gun drawn when he made the

12    statement?

13    A    No.

14    Q    All right.  What happened after you saw

15    the defendant and the other individual fighting?

16    Actually, did you learn the name of the

17    other individual?

18    THE COURT:  He said, William Walker.

19    Q    What happened after you saw the defendant

20    and Mr. Walker fighting?

21    THE COURT:  He didn't say he saw them

22    fighting.

23    He said he saw this gentleman lift

24    his cane up in a menacing manner.

25    Q    After you saw the defendant lift his cane

(8)

AML    12-15-09    BENNETT / Zito-peo-direct

(1)    up in a menacing manner towards Willy Walker, what

(2)    happened?

(3)        A    Placed under arrest for <u>disorderly conduct</u>

(4)    and brought to the 28 Precinct, located on One

(5)    Hundred twenty-third and Eighth Avenue.

6        Q    Was a search conducted there?

7        A    Yes, it was.

8        Q    What, if anything, was recovered?

9        A    Crackpipe.

10       Q    What did you do with the crackpipe?

11       A    Vouchered it.

12       Q    Do you remember the voucher number?

13       A    Not offhand.

14       Q    Anything that you would refresh your

15    recollection?

16       A    Copy of the voucher.

17            MS. LONDON:  May I hand this up?

18            THE COURT:  People's One for

19    Identification.

20            Let me see it.

21            All right, show it to the witness.

22       Q    Now looking at the voucherer, what was the

23    voucher number?

24       A    Number was P 538957.

25       Q    And what, if anything, happened at the 28

AML    12-15-09    BENNETT / Zito-peo-direct

1  Precinct?

2      A    Lineup was conducted.

3      Q    What were the circumstances leading to the

4  lineup being conducted at the 28 Precinct?

5      A    The individual, Mr. Willy Walker, stated

6  to me that the defendant had broken into his

7  vehicle.  At that point I asked him did you see him.

8              THE COURT:  When did he say this?

9              THE WITNESS:  At the Precinct.

10             I asked him about did you see him

11  personally.  He said no, I have a witness.

12     Q    At any point did you learn that witness'

13  name?

14     A    That's correct.  His name as Mr. Michael

15  Hart.

16     Q    And was Mr. Hart contacted at the 28

17  Precinct?

18     A    That is correct.

19             THE COURT:  Who contacted him?

20             THE WITNESS:  Mr. Willy Walker.

21     Q    At any point did Mr. Hart come to the 28th

22  Precinct?

23     A    Yes.

24     Q    Approximately what time did Mr. Hart

25  arrive there?

EX 2                              Proceedings                              3

1      called him numerous times saying that it's not a request

2      by me; at this point, it is a court order.  I was going to

3      have Officer Zito pick him up today.  Officer Zito was

4      never notified --

5                  THE COURT:  Come up.

6                  (Whereupon, a discussion was held at the bench

7      and off the record.)

8                  THE COURT:  For the record, the People have

9      rested in this case.  As I understand, the People wish to

10     reopen the case in order to call Mr. Walker, is that

11     correct?

12                 MS. LONDON:  That's correct, Judge.

13                 THE COURT:  Any objection by the defendant?

14                 MS. MIRON:  No.

15                 THE COURT:  Alright, let's call him.  Call your

16     next witness.

17                 MS. LONDON:  The People call Willie Walker.

18                 A COURT OFFICER:  Witness entering.

19                 (Whereupon, the witness entered the courtroom.)

20     W I L L I E    W A L K E R, called as a witness, by and on

21         behalf of the People at the Hearing, having been duly

22         sworn or affirmed, testified as follows:

23                 THE CLERK:  Thank you.

24                 A COURT OFFICER:  Please be seated.

25                 In a loud, clear voice, please state your name,

                              Joanne Fleming

EX 1                          Proceedings                              (2)

1              (In open court)

2              THE CLERK:  Calendar number sixteen, indictment

3      1914 of 2009, Anthony Bennett.

4              This is a continued hearing.  All parties are

5      present.

6              Appearances, please.

7              MS. LONDON:  Good morning, your Honor.

8      Julia London for the People.

9              THE COURT:  Good morning.

10             MS. MIRON:  Neighborhood Defense Service of

11     Harlem by Annalisa Miron.

12             Good morning.

13             THE COURT:  Good morning.

14             MS. BAYLOR:  Joined by Amber Baylor.

15             THE COURT:  Alright.

16             Now, the People have rested in this case.  As I

17     understand, counsel wanted to call a witness regarding a

18     certain conversation that was had on the telephone, is

19     that correct?

20             MS. MIRON:  Yes.

21             THE COURT:  And your witness is Willie Walker?

22             MS. LONDON:  I believe the witness that they

23     wanted to hear from, they were most interested in hearing

24     from, is Mr. Hart who was served a subpoena back in

25     December.  He is not complying with the subpoena.  I have

                          Joanne Fleming

*1 EX1MH*  *Michael Hart EX*

CRIMINAL COURT OF THE CITY OF NEW YORK
PART A, COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | SUPPORTING DEPOSITION |
| vs. | 100.20 C.P.L. |
| ANTHONY BENNETT | Docket No        2009NY022949 |
| Defendant | Adjourned Date    4/22/2009 |

I, Michael Hart, of an address known to the New York County District Attorney's Office, have read the attached criminal complaint. The facts in this complaint that are attributed to me are true, and I know these facts from my personal knowledge.

False statements made herein are punishable as a Class A misdemeanor pursuant to section 210.45 of the penal law.

x _Michael Hart_        x _3/28/09_
Signature                        Date

*9 EX-9*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 83

---------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

                -against-

ANTHONY BENNETT,

                        Defendant.

STIPULATION

Indictment No.    1914/09

---------------------------------------------------

It is agreed to and stipulated by the parties:

(1) That on March 19, 2009, it was not raining between 5:00 am and 5:30 am.  The sun rose at 7:01 am that day.

(2) That the New York City Police Department preserves recordings of all 911 calls in the regular course of business.  The New York City Police Department does not have a record of a 911 call made by Michael Hart on March 19, 2009.

(3) That the certified transcript of the grand jury testimony is a true and accurate record of the testimony at that proceeding.  The proceeding was held on April 15, 2009 and a portion of Michael Hart's testimony is as follows:

"Q: What did you do? When you say you saw him hit this window, what exactly do you mean?

A:  He was walking with a limp and then he just took something and just hit the passenger side of the window."

| 1 | A    Yes, ma'am, he did. |
| 2 | Q    What was the description that he gave you? |
| 3 | A    The description, he was a <u>heavyset guy with a gray</u> |
| 4 | <u>skull cap and a hoody on and he had a cane.</u> |
| 5 | Q    And you told Mr. Hart that you had somebody who fit |
| 6 | that description? |
| 7 | A    No, I told Mr. Hart that I think they got the guy. |
| 8 | Q    And did you let Mr. Hart know that you had seen the |
| 9 | person who was at the precinct? |
| 10 | A    I was the one that called him. |
| 11 | THE COURT:  Were you at the precinct when they |
| 12 | brought the defendant into the precinct? |
| 13 | THE WITNESS:  No, sir, they told me to go home. |
| 14 | THE COURT:  Did you ever see him in the precinct |
| 15 | at all? |
| 16 | THE WITNESS:  No, sir. |
| 17 | Q    Were you present when the person was arrested? |
| 18 | A    Yes, I was.  They told me to go home after he was |
| 19 | scuffling with them. |
| 20 | Q    You knew what the person they arrested looked like? |
| 21 | A    Yes, ma'am. |
| 22 | Q    And you let Mr. Hart know that you saw the person |
| 23 | that was arrested? |
| 24 | A    I told him that I saw the guy that was arrested. |
| 25 | Q    And he fit the description that he gave? |

Joanne Fleming

EX 6

1      A    I didn't say that.  I said I saw the guy that was

2   arrested.

3      Q    But you believe it was the guy that Mr. Hart told you

4   about?

5      A    Yes.

6      Q    And you let Mr. Hart know that?

7      A    I told him I saw the guy arrested.

8      Q    Maybe I'm not clear.  Earlier you testified that you

9   had told Mr. Hart that they caught -- that they had the guy.

10      A    Yes.

11      Q    Okay.  And this was the guy that Mr. Hart -- you

12   believed Mr. Hart had described to you?

13      A    Yes.

14           MS. BAYLOR:  I'm sorry, one moment.

15           THE WITNESS:  That's okay.

16           (Counsel conferring with counsel.)

17      Q    Mr. Walker, before -- I'm sorry.

18           Earlier you testified that you were present when the

19   person who was suspected to have broken into your car was taken

20   under arrest.

21      A    Yes.

22      Q    Did you let the officers know that you had

23   information regarding a witness?

24      A    I told him that I had filed a report and this looked

25   like the description of the person that broke into my car.

Joanne Fleming

ER-4

W. Walker - People - Direct                                      7

1  from the Twenty-Eighth Precinct?

2          A    The sergeant called and asked if I could get in touch

3  with the person that identified the defendant.

4          Q    Okay.  So at that time that you contacted Mr. Hart,

5  you were no longer at the precinct?

6          A    No, ma'am.  I called him from my cell phone.

7          Q    And how had you gotten Mr. Hart's number?

8          A    Mr. Hart gave it to me.

9          Q    When did Mr. Hart give it to you?

10         A    I think on the Thursday, on the nineteenth, when my

11  car had been broken into, Mr. Hart -- Mr. Hart saw me getting

12  into my car and he said he saw the guy that broke into it.

13         Q    Had you previously known Mr. Hart?

14         A    No, ma'am.

15         Q    And had you spoken to Mr. Hart before calling him on

16  the twenty-first?

17         A    No, ma'am.

18         Q    So you contacted Mr. Hart and you asked him to come

19  to the Twenty-Eighth Precinct?

20         A    I told him that the sergeant wanted to speak to him

21  in the Twenty-Eighth Precinct.

22         Q    And you told him that they had the guy?

23         A    I think they had the guy.  That's all.

24         Q    Had Mr. Hart previously given you a description of

25  the guy?

Joanne Fleming

 

# New York City Police Department
## Omniform System - Arrests

**RECORD STATUS: ARR PRC CMPL** | **Arrest ID: M09626813 - M**

**Arrest Location: FRONT OF 533 MANHATTAN AVENUE** | **Pct: 028**

Arrest Date: 03-21-2009  Processing Type: ON LINE
Time: 07:37:00  DCJS Fax Number: M0021778
Sector: I  Special Event Code: -
DAT Number: 0
Stop And Frisk: NO  Return Date: 0000-00-00
Serial #: 0000-000-00000

## ARREST DATA - COMPLAINT NOT REQUIRED

Jurisdiction: NYPD  NYC School Safety Data:  NYC Transit Data:
Premises: STREET  On School Property:  Station:
Location Within: PUBLIC SIDEWALK  School Type:  Line #:
Occur.Date/Time: 2009-03-21 - 07:32  School Num:  Location:
NYC Housing Development:  School Name:

Offense Location: FRONT OF 533 MANHATTAN AVENUE  Borough: MANHATTAN

## CHARGES:
Arrest #: M09626813

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 220.50 01 M | A | | 1 | CRIM USE DRUG PAR-2ND:DILUENTS |
| #02 | No | PL 220.03 M | A | | 1 | CRIM POSS CONTRL SUBST-7TH |
| #03 | No | PL 240.20 01 V | 0 | | 1 | DIS/CON:FIGHT/VIOLENT BEHAVIOR |

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

## DETAILS:
Arrest #: M09626813

AT T/P/O DEFT. WAS OBSERVED ENGAGED IN VIOLENT OR IN FIGHTING, THREATENIG BEHAVIOR. (SILA) DEFT. WAS IN POSSESION OF CRACK PIPE W/ RESIDUE FROM LEFT PANT POCKET, AND PUSH PIN IN DEFT'S RIGHT PANT POCKET.

## DEFENDANT: BENNETT, ANTHONY L
NYSID #: | Arrest #: M09626813

Nick/AKA/Maiden: | Height: 5FT 10IN | Order Of Protection: NO
Sex: MALE | Weight: 308 | Issuing Court:
Race: BLACK | Eye Color: BROWN | Docket #:
Age: 47 | Hair Color: BLACK | Expiration Date:
Date Of Birth: 04/02/1981 | Hair Length: BALD | Relation to Victim: STRANGER
U.S. Citizen: YES | Hair Style: BALD | Living together: NO
Place Of Birth: NEW YORK | Skin Tone: DARK | Can be identified: YES
Need Interpreter: NO | Complexion: BLOTCHY
Language:
Accent: NO | Soc.Security #: 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
Occupation: UNKNOWN | Gang Affiliation: NO
Physical Condition: APPARENTLY NORMAL Lic/Permit Type: | Name:
Drug Used: NONE | Lic/Permit No: | Identifiers:

| LOCATION | ADDRESS | CITY | STATE/CNTRY | ZIP | APT/ROOM | PCT |
|---|---|---|---|---|---|---|
| HOME-PERMANENT | 533 MANHATTAN AVENUE | MANHATTAN | NEW YORK | | | 028 |

Need Interpreter: NO
Language:
N.Y.C.H.A Resident? NO

Notified Of Crime
Victim Comp. Law: NO

| LOCATION | ADDRESS | CITY | STATE/COUNTRY | ZIP | APT/ROOM |
|---|---|---|---|---|---|
| HOME-PERMANENT | ███████ | MANHATTAN | NEW YORK | 10027 | |

Phone #:

Action against Victim:

Actions Of Victim Prior To Incident:
UNK

Victim Of Similar Incident:

If Yes, When And Where

| REPORTER: # 1 of 1 | Name: WALKER,WILLIE | Complaint #: 2009-028-01475 |
|---|---|---|

Nick/AKA/Maiden:
Sex/Type: MALE
Race: BLACK
Age: 068
Date Of Birth: 03/31/1940

Need Interpreter: NO
Language:

Gang Affiliation: NO
Name:
Identifiers:

Relationship To Victim:

| Location | Address | City | State/Country | Zip | Apt/Room |
|---|---|---|---|---|---|
| HOME-PERMANENT | ███████ | MANHATTAN | NEW YORK | 10027 | |

Phone #:

| WANTED: # 1 of 1 | Name: UNK, | Complaint#: 2009-028-01475 |
|---|---|---|

Nick/AKA/Maiden:
Sex: UNKNOWN
Race:
Age:
Date Of Birth: UNKNOWN
U.S. Citizen:
Place Of Birth:
Need Interpreter:
Language:
Accent: NO

Height: FTIN
Weight: 0
Eye Color: UNKN
Hair Color: UNKNWN
Hair Length:
Hair Style: UNKNOWN
Skin Tone: UNKN
Complexion: UNKNOWN

S.S. #: 0

Order Of Protection: NO
Issuing Court:
Docket #:
Expiration Date:
Relation to Victim: UNKNOWN/NONE
Living together: NO
Can be Identified: NO

Gang Affiliation:
Name:
Identifiers:

| LOCATION | ADDRESS | CITY | STATE/COUNTRY | ZIP | APT/ROOM | HOW LONG? | RES. PCT |
|---|---|---|---|---|---|---|---|

Phone #:

N.Y.C.H.A. Resident:    N.Y.C. Housing Employee:    On Duty:
Development:    N.Y.C. Transit Employee:

Physical Force:
Weapon Used/Possessed:
Non-Firearm Weapon:
Other Weapon Description:

Gun:
Make:
Caliber:
Color:
Type:
Other/Gun Specify:
Discharged:

Used Transit System:
Station Entered:
Time Entered:
Metro Card Type:
Metro Card Used/Poses:
Card #:

| CRIME DATA | DETAILS |
|---|---|
| MODUS OPERANDI | UNK |
| ACTIONS TOWARD VICTIM | UNK |



| CLOTHING | HEADGEAR -UNK -UNKNOWN COLOR |
| CLOTHING | FOOTWEAR -UNK -UNKNOWN COLOR |
| CLOTHING | OUTERWEAR -UNK -UNKNOWN COLOR |
| CLOTHING | ACCESSORIES -UNK -UNKNOWN COLOR |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

---

**PROPERTY:**        Complaint #2009-028-01475

| Lost/Stolen/Found: STOLEN | Business/Personal/Both?: PERSONAL | Owner Identification Num: NONE |

| Item | Amt | Article | Description | Serial # | $ Stolen | $ Recovered |
|------|-----|---------|-------------|----------|----------|-------------|
| 1.   | 1.  | IPOD    |             |          | 96.      | 0.          |

TOTALS: STOLEN 96. RECOVERED 0.

---

| **VEHICLE: # 1 of 1** | VIN: **SAJWAOSB69HR11399** | Complaint #: 2009-028-01475 |
|---|---|---|
| Vehicle Was: OTHER | Vehicle Stolen/Attempted Stolen From: | Invoice #: |

| | **Vehicle** | Recovered Prior To Alarm: |
|---|---|---|
| Plate(s): | | Alarm #: |
| Number of Plates: 0 | Year: 2009 | Precinct: 000 |
| License Plate #: DGE2027 | Make: JAGUAR | Date: |
| State: NY | Model: | Time: |
| Expires: 0709 | Style: SEDAN-4DR | Transmitted By: |
| Type: | Color: BLUE | |
| Ins. Code: | | |
| Policy #: ▓▓▓▓▓▓ | | |

| Vehicle Condition: | Held For Forfeiture: |

| Reporting/Investigating M.O.S. Name: POF RAMIREZ NERYS | Tax #: ▓▓▓▓ | Command: 028 PCT | Rep.Agency: NYPD |
| Supervisor Approving Name: SGT WATSON CYNTHIA | Tax #: ▓▓▓▓ | Command: 028 PCT | Rep.Agency: NYPD |
| Complaint Report Entered By: PAA BONAPARTE | Tax #: ▓▓▓▓ | Command: 028 PCT | Rep.Agency: NYPD |
| Signoff Supervisor Name: SGT CRESPO | Tax #: ▓▓▓▓ | Command: 028 PCT | Rep.Agency: NYPD |

---



# END OF COMPLAINT REPORT
# # 2009-028-01475



Print this Report

# TRIAL BUREAU THIRTY

| DEFENDANT | AGE | ATTORNEY | Total Arrest | Mis Con | Fel Con | NYSID |
|---|---|---|---|---|---|---|
| ANTHONY BENNETT | 47 | LORIN NATHAN (LAS) | 66 | 47 | 5 | 5306561Y |

| | Date | Time (approx) | Place |
|---|---|---|---|
| OCCURRENCE | 3/19/09 | 05:30 AM | In front of 342 West 121st Street |
| ARREST | 3/21/09 | 07:37 | In front of 533 Manhattan Avenue |

| SUMMARY OF CASE | AUTO STRIPPING BUMP-UP: Defendant breaks car window – D has prior conviction for auto stripping from October 2008. |
|---|---|

| WEAPON | YES: | NO: X | RECOVERED: | | LOADED W/: | |
|---|---|---|---|---|---|---|
| INJURY | YES: | NO: X | TO: | | | |
| NARCOTICS | PLACE OF TREATMENT: | | | | | |
| | TYPE: | | WEIGHT: (milligrams) | | LAB: | FT: |
| SEARCH WARRANT | YES: | NO: X | NUMBER: | | | |

| GRAND JURY | DATES: 4/15/09, 4/16/09 | NO. PM 2 | TERM: 4th |
|---|---|---|---|
| | ASSIGNED ADA: Julia London | | |

| Final Charges: PL 165.10 (1) – Auto Stripping in the Second Degree | Approved: |
|---|---|
| | CQ4. 18·09 |

## REMARKS

Eyewitness Michael Hart observes D break passenger window of a 2009 Jaguar. Hart knows that CW Willie Walker is the owner of the car. Hart reports to 28th Pct and tells Walker. Two days later, D is observed by AO and Walker, at same location, looking into cars. Walker confronts D and they get into verbal altercation where D ends up raising a cane at Walker. D is arrested. Police do lineup at 28 pct and Hart identifies D. Walker's Ipod and some change missing from the car.

## WITNESSES

| Name | Address | Telephone | Occupation/Employer | DOB | Testify GJ |
|---|---|---|---|---|---|
| MICHAEL HART | | | Supervisor at nursing home | | Y |
| WILLIE WALKER | | | Building supervisor | | Y |

| Police Officers | Shield | Tax | Command | Telephone | Testify GJ |
|---|---|---|---|---|---|
| FRANCIS ZITO | 22 | | 28TH PCT | 212-678-1618 (CMD) | Y |
| BRANDY CHIU | 30970 | | 28TH PCT | | N |

P. 01



CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

1. Anthony Bennett (M 47)

ECAB #
972695

Defendant.

MISDEMEANOR        Page 1 of 2

*Julie Linder*
*X 9110*

Police Officer Francis Zito, shield 00022 of the 028 Precinct, states as follows:

On March 21, 2009, at about 07:32 hours in front of 342 West 121st Street in the County and State of New York, the Defendant committed the offenses of:

1.   PL145.00(1)      Criminal Mischief in the Fourth Degree
                      (1 count)
2.   PL220.03         Criminal Possession of a Controlled Substance in the Seventh
                      Degree
                      (1 count)
3.   PL240.20(1)      Disorderly Conduct
                      (1 count)

the defendant intentionally damaged property of another while having no right to do so nor any reasonable grounds to believe that he had such a right; the defendant knowingly and unlawfully possessed a controlled substance; and the defendant, with intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof, engaged in fighting and in violent, tumultuous and threatening behavior.

The offenses were committed under the following circumstances:

Deponent states that deponent is informed by Michael Hart, of an address known to the District Attorney's Office, that informant Hart observed the defendant forcibly break the passenger side window of a 2009 Jaguar, causing said window to shatter.

Deponent states that deponent is informed by Willie Walker, of an address known to the District Attorney's Office, that informant Walker is the custodian of such property and that the defendant did not have permission or authority to damage the property.

Deponent states that deponent observed the defendant behaving in a violent, tumultuous, and threatening manner, as follows: defendant was yelling and screaming, to





1    EXAMINATION BY MS. LONDON:

2          Q.    Good afternoon, Officer Zito.

3    Directing your attention to March 21, 2009, at

4    approximately 7:30 a.m., did you have occasion

5    to make an arrest at that time?

6          A.    Yes, I did.

7          Q.    What were the circumstances

8    leading to that arrest?

9          A.    On that date in particular, I was

10   driving, working in the 2-8 Precinct, driving an

11   unmarked police car.  I observed two males

12   arguing at 7:30 in the morning, cursing and

13   screaming at each other.  Upon approaching the

14   two unknown individuals, Anthony Bennett, which

15   came to be, had his cane raised, looked like he

16   was going to hit the other male.  Finally

17   getting to the location where they both were

18   standing, was trying to break up the situation,

19   which was escalating; broke up both individuals.

20   The defendant Anthony Bennett was still becoming

21   boisterous and verbal.  At that point he was

22   placed under arrest for disorderly conduct.

2 EX M H

HART                                                    4

1      (M I C H A E L    H A R T    enters the grand jury

2    room.)

3                          FOREPERSON:  Do you

4              solemnly swear that the evidence

5              you shall give to the grand jury

6              upon this complaint against

7              Anthony Bennett shall be the

8              truth, the whole truth, and

9              nothing but the truth, so help

10             you God?

11                        THE WITNESS:  Yes.

12                        GRAND JURY WARDEN:  Have a

13             seat, Mr. Hart.  Can you state

14             your name and county of residence.

15                        THE WITNESS:  Michael Hart;

16             New York City.

17   EXAMINATION BY MS. LONDON:

18            Q.    Good afternoon, Mr. Hart.

19   Directing your attention to March 19, 2009, at

20   approximately 5:10 a.m., where were you at that

21   time?

22            A.    I was home in my apartment.

3EX

1    Q.   And is that in New York County?

2    A.   Yes.

3    Q.   Briefly describe for the members

4  of the grand jury what happened at that time.

5    A.   I was brushing my teeth, looking

6  out the window, and I saw the defendant walking

7  up the block and hit a Jaguar window.

8    Q.   What did you do?  When you say you

9  saw him hit this window, what exactly do you

10  mean?

11    A.   He was walking with a limp and

12  then he just took something and just hit the

13  passenger side of the vehicle.

14         MS. LONDON:  Let the record

15         reflect that --

16         (Ms. London confers with

17         Mr. Nasar.)

18    Q.   Could you see that the window was

19  broken at that time?

20    A.   No.

21    Q.   So what did you do after you saw

22  the person hit the Jaguar window?

1      A.   I tried to call 911, but, if

2 you've ever tried to call 911, they give you the

3 run around.  So I proceeded to get dressed and

4 get ready for work.  So I got in my vehicle and

5 I drove down the block and I saw the defendant

6 again.

7      Q.   What did you do -- What street

8 was this on you saw this happen?

9      A.   121st Street and Manhattan Avenue.

10      Q.   What did you do after you saw the

11 person you saw hit the window again?

12      A.   I went around the block and I went

13 to the 28th Precinct and notified them of the

14 situation.

15      Q.   So, just to clarify, you saw the

16 person hit the car window, and then you got in

17 your car and drove towards the precinct and you

18 saw that person again?

19      A.   Yes.

20      Q.   And then you went to the 28th

21 Precinct?

22      A.   Yes.

5-EX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Q.    And what did you do there?

A.    Filed a complaint.

Q.    Did you have an opportunity to view the person you previously saw breaking the car window in a line-up on March 21st?

A.    Yes.

Q.    And was that March 21, 2009, at approximately 3:00 p.m., inside the 28th Precinct?

A.    Yes.

Q.    Did you point the defendant out?

A.    Yes, I did.

Q.    What number did you point out?

A.    Two.

Q.    And the person you identified as number two -- The person who had number two was the person you saw break the window?

A.    Yes.

Q.    And at the line-up there was a group of people, each of whom had a separate number; is that correct?

A.    Yes.

# APS DA DATASHEET

| Defendant #1<br>Anthony Bennett | Defendant #2 |
|---|---|

| Bail Rec: | Bail Rec: |
|---|---|
| Reasons:  ~XL.M<br>  ~X?p-H | Reasons: |

| Bail Req: $1K | Bail Set: ROR | Bail Req: | Bail Set: |
|---|---|---|---|

## D BREAKS CAR WINDOW / DIS CON & CRACK PIPE

- Eyewitness Michael hart observed D break the passenger window of a 2009 Jaguar
- Hart knows that Willie Walker is owner
-AO obs D looking into vehicles
- AO obs D looking into a red Jeep
- Willie Walker approaches D and a verbal altercation begins
- Ao obs D raise the cane D is holding and AO obs that it appeared like the D was going to hit Walker
-Police do lineup at 28 PCT and Hart IDs D

| Statements △1: | Statements △2: |
|---|---|

| ID △1:<br>On 3/21/09 aa 15:00  iso 28 PCT 1 EW ID'd D in a lineup | ID △2: |
|---|---|

| Date:<br>3/22 | Part:<br>A24 | Special Instructions | Notice<br>Checklist | D E F 1 | D F 2 |
|---|---|---|---|---|---|
| ADA:<br>Cheng | | Arraignment Notes: | 710.30(1A) | | |
| | | | 710.30(1B) | ☐ | |
| Judge:<br>Schaffer | | | 190.50(5A) | | |
| | | | Cross G.J | | |
| Court Reporter:<br>Tejada | | | OTP | | |
| | | | 170.20 | | |
| Adj. Date: | Adj. Part:<br>A | | Request TOP | | |
| | | | F & S Supp Dep. | | |
| Reasons:<br>CRB<br>X3 | | | 450.10 48 Hour | | |
| | | | 450.10 15 Day | | |
| | | NO O)R | Surety _____ | | |
| | | | F & S Field Test | | |
| △/C #1: Nathan (LAS) | | △/C #2: | | | |

EX-Zito

1

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF NEW YORK : CRIMINAL TERM JHO PART 37

3    - - - - - - - - - - - - - - - - - X  Indictment No.

4    PEOPLE OF THE STATE OF NEW YORK,              1914/09
                - against -

5

6    ANTHONY BENNETT,                            HEARING

7                    Defendant.

8    - - - - - - - - - - - - - - - X

     100 Centre Street
9    New York, New York

10   Date Held: DECEMBER 15, 2009

11   B E F O R E:

12              HONORABLE HERBERT J. ADLERBERG,

13                      Judicial Hearing Officer.

14   A P P E A R A N C E S:
         ROBERT M. MORGENTHAU, ESQ.,
15       DISTRICT ATTORNEY, NEW YORK COUNTY
         by: J. LONDON, ESQ.,
16       Assistant District Attorney
         For the People
17
         NEIGHBORHOOD DEFENDER SERVICES OF HARLEM
18       by:  ANNALISA MIRON, ESQ.,
         Attorney for Defendant
19

20
                        Anne Love, C.S.R.,
21                      Senior Court Reporter

22

23

24

25

AML    12-15-09    BENNETT / Zito-peo-direct

1           THE COURT:  Indicating the defendant.

2      Q     Please describe the circumstances leading

3  to the arrest of this defendant?

4      A     All right.

5           Approximately 7:30 in the morning, on One

6  Hundred twenty-third and Manhattan Avenue, two

7  individuals, the defendant and an unknown, at the

8  time his name was Willy Walker, were in a verbal

9  dispute.

10          The defendant raised his cane in a

11  menacing gesture like he was going to hit him.

12          At that point they were placed, he was

13  placed under arrest for disorderly conduct.

14      Q     At the scene did the defendant say

15  anything to you?

16      A     At the scene, as soon as we, on approach,

17  got out of the car, out of the vehicle, were in

18  uniform, the defendant was yelling at the other

19  individual, get the, exact words were, leave me the

20  F alone, if I'm correct in saying that, get the F

21  away from me.

22      Q     Did he say anything else that you recall?

23      A     Not that I recall.

24          THE COURT:  You say we got out of the

25      car.

AML    12-15-09    BENNETT / Zito-peo-direct

Who is we?

THE WITNESS:  Me and my officer,

partner, Officer Chiu.  C H I U.

1
2
3

4    Q    Where was that statement made?

5    A    At the scene.  One Hundred twenty-third

6 and Manhattan Avenue.

7    Q    When was the statement made?

8 Approximately?

9    A    Approximately 7:28.

10    Q    Approximately when was the arrest made?

11    A    7:30.

12    Q    Was the defendant under arrest at the time

13 he made the statement?

14    A    No.

15    Q    What, if any, questions did you ask the

16 defendant before he made that statement to you?

17    A    None.

18    Q    Did you ask him anything to elicit the

19 statement?

20    A    No.

21    Q    Did you say anything to the defendant

22 before he made the statement?

23    A    No.

24    Q    Did you make any promises to the defendant

25 prior to his making the statement?



AML    12-15-09    BENNETT / Zito-peo-direct

1      A    No.

2      Q    What, if any, threats did you make to the

3  defendant prior to his making the statement?

4      A    None.

5      Q    Did you use any force to elicit the

6  statement?

7      A    No.

8      Q    Was the defendant handcuffed when he made

9  the statement?

10     A    No.

11     Q    Was your gun drawn when he made the

12 statement?

13     A    No.

14     Q    All right.  What happened after you saw

15 the defendant and the other individual fighting?

16          Actually, did you learn the name of the

17 other individual?

18          THE COURT:  He said, William Walker.

19     Q    What happened after you saw the defendant

20 and Mr. Walker fighting?

21          THE COURT:  He didn't say he saw them

22    fighting.

23          He said he saw this gentleman lift

24    his cane up in a menacing manner.

25     Q    After you saw the defendant lift his cane

(8)

AML    12-15-09    BENNETT / Zito-peo-direct

1  up in a menacing manner towards Willy Walker, what

2  happened?

3        A     Placed under arrest for <u>disorderly conduct</u>

4  and brought to the 28 Precinct, located on One

5  Hundred twenty-third and Eighth Avenue.

6        Q     Was a search conducted there?

7        A     Yes, it was.

8        Q     What, if anything, was recovered?

9        A     Crackpipe.

10       Q     What did you do with the crackpipe?

11       A     Vouchered it.

12       Q     Do you remember the voucher number?

13       A     Not offhand.

14       Q     Anything that you would refresh your

15  recollection?

16       A     Copy of the voucher.

17              MS. LONDON:  May I hand this up?

18              THE COURT:  People's One for

19  Identification.

20              Let me see it.

21              All right, show it to the witness.

22       Q     Now looking at the voucherer, what was the

23  voucher number?

24       A     Number was P 538957.

25       Q     And what, if anything, happened at the 28



AML   12-15-09   BENNETT / Zito-peo-direct

1   Precinct?

2        A      Lineup was conducted.

3        Q      What were the circumstances leading to the

4   lineup being conducted at the 28 Precinct?

5        A      The individual, Mr. Willy Walker, stated

6   to me that the defendant had broken into his

7   vehicle.  At that point I asked him did you see him.

8               THE COURT:  When did he say this?

9               THE WITNESS:  At the Precinct.

10              I asked him about did you see him

11  personally.  He said no, I have a witness.

12       Q      At any point did you learn that witness'

13  name?

14       A      That's correct.  His name as Mr. Michael

15  Hart.

16       Q      And was Mr. Hart contacted at the 28

17  Precinct?

18       A      That is correct.

19              THE COURT:  Who contacted him?

20              THE WITNESS:  Mr. Willy Walker.

21       Q      At any point did Mr. Hart come to the 28th

22  Precinct?

23       A      Yes.

24       Q      Approximately what time did Mr. Hart

25  arrive there?

*EX 2*                              Proceedings                                3

1    called him numerous times saying that it's not a request

2    by me; at this point, it is a court order.  I was going to

3    have Officer Zito pick him up today.  Officer Zito was

4    never notified --

5                    THE COURT:  Come up.

6                    (Whereupon, a discussion was held at the bench

7    and off the record.)

8                    THE COURT:  For the record, the People have

9    rested in this case.  As I understand, the People wish to

10   reopen the case in order to call Mr. Walker, is that

11   correct?

12                   MS. LONDON:  That's correct, Judge.

13                   THE COURT:  Any objection by the defendant?

14                   MS. MIRON:  No.

15                   THE COURT:  Alright, let's call him.  Call your

16   next witness.

17                   MS. LONDON:  The People call Willie Walker.

18                   A COURT OFFICER:  Witness entering.

19                   (Whereupon, the witness entered the courtroom.)

20   W I L L I E    W A L K E R, called as a witness, by and on

21       behalf of the People at the Hearing, having been duly

22       sworn or affirmed, testified as follows:

23                   THE CLERK:  Thank you.

24                   A COURT OFFICER:  Please be seated.

25                   In a loud, clear voice, please state your name,

                             Joanne Fleming

*EX 1*

Proceedings                                          ②

1           (In open court)

2           THE CLERK:  Calendar number sixteen, indictment

3      1914 of 2009, Anthony Bennett.

4           This is a continued hearing.  All parties are

5      present.

6           Appearances, please.

7           MS. LONDON:  Good morning, your Honor.

8      Julia London for the People.

9           THE COURT:  Good morning.

10          MS. MIRON:  Neighborhood Defense Service of

11     Harlem by Annalisa Miron.

12          Good morning.

13          THE COURT:  Good morning.

14          MS. BAYLOR:  Joined by Amber Baylor.

15          THE COURT:  Alright.

16          Now, the People have rested in this case.  As I

17     understand, counsel wanted to call a witness regarding a

18     certain conversation that was had on the telephone, is

19     that correct?

20          MS. MIRON:  Yes.

21          THE COURT:  And your witness is Willie Walker?

㉒          MS. LONDON:  I believe the witness that they

㉓     wanted to hear from, they were most interested in hearing

→ ㉔   from, is Mr. Hart who was served a subpoena back in

→ ㉕   December.  He is not complying with the subpoena.  I have

                        Joanne Fleming

2 EXIMH                    Michael Hart EX

CRIMINAL COURT OF THE CITY OF NEW YORK
PART A, COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

vs.

ANTHONY BENNETT

                              Defendant

SUPPORTING DEPOSITION
100.20 C.P.L.

Docket No        2009NY022949

Adjourned Date    4/22/2009

I, Michael Hart, of an address known to the New York County District Attorney's Office, have read the attached criminal complaint. The facts in this complaint that are attributed to me are true, and I know these facts from my personal knowledge.

False statements made herein are punishable as a Class A misdemeanor pursuant to section 210.45 of the penal law.

x _Michael Hart_ x 3/28/09
Signature                        Date

EX-9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 83

------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK          STIPULATION

                -against-          Indictment No.      1914/09

ANTHONY BENNETT,

                        Defendant.

------------------------------------------------


It is agreed to and stipulated by the parties:


(1) That on March 19, 2009, it was not raining between 5:00 am and 5:30 am. The sun rose at 7:01 am

    that day.


(2) That the New York City Police Department preserves recordings of all 911 calls in the regular

    course of business. The New York City Police Department does not have a record of a 911 call

    made by Michael Hart on March 19, 2009.


(3) That the certified transcript of the grand jury testimony is a true and accurate record of the testimony

    at that proceeding. The proceeding was held on April 15, 2009 and a portion of Michael Hart's

    testimony is as follows:

    "Q: What did you do? When you say you saw him hit this window, what exactly do you mean?

    A: He was walking with a limp and then he just took something and just hit the passenger side

    of the window."

W. Walker - People - Direct                    8

1    A    Yes, ma'am, he did.

2    Q    What was the description that he gave you?

3    A    The description, he was a <u>heavyset guy with a gray</u>

4  <u>skull cap and a hoody on and he had a cane.</u>

5    Q    And you told Mr. Hart that you had somebody who fit

6  that description?

7    A    No, I told Mr. Hart that I think they got the guy.

8    Q    And did you let Mr. Hart know that you had seen the

9  person who was at the precinct?

10    A    I was the one that called him.

11            THE COURT:  Were you at the precinct when they

12        brought the defendant into the precinct?

13            THE WITNESS:  No, sir, they told me to go home.

14            THE COURT:  Did you ever see him in the precinct

15        at all?

16            THE WITNESS:  No, sir.

17    Q    Were you present when the person was arrested?

18    A    Yes, I was.  They told me to go home after he was

19  scuffling with them.

20    Q    You knew what the person they arrested looked like?

21    A    Yes, ma'am.

22    Q    And you let Mr. Hart know that you saw the person

23  that was arrested?

24    A    I told him that I saw the guy that was arrested.

25    Q    And he fit the description that he gave?

                    Joanne Fleming

EX 6

W. Walker - People - Direct                    9

1     A    I didn't say that.  I said I saw the guy that was

2  arrested.

3     Q    But you believe it was the guy that Mr. Hart told you

4  about?

5     A    Yes.

6     Q    And you let Mr. Hart know that?

7     A    I told him I saw the guy arrested.

8     Q    Maybe I'm not clear.  Earlier you testified that you

9  had told Mr. Hart that they caught -- that they had the guy.

10    A    Yes.

11    Q    Okay.  And this was the guy that Mr. Hart -- you

12 believed Mr. Hart had described to you?

13    A    Yes.

14              MS. BAYLOR:  I'm sorry, one moment.

15              THE WITNESS:  That's okay.

16              (Counsel conferring with counsel.)

17    Q    Mr. Walker, before -- I'm sorry.

18              Earlier you testified that you were present when the

19 person who was suspected to have broken into your car was taken

20 under arrest.

21    A    Yes.

22    Q    Did you let the officers know that you had

23 information regarding a witness?

24    A    I told him that I had filed a report and this looked

25 like the description of the person that broke into my car.

Joanne Fleming

EX-4

W. Walker - People - Direct                              7

1    from the Twenty-Eighth Precinct?

2         A    The sergeant called and asked if I could get in touch

3    with the person that identified the defendant.

4         Q    Okay.  So at that time that you contacted Mr. Hart,

5    you were no longer at the precinct?

6         A    No, ma'am.  I called him from my cell phone.

7         Q    And how had you gotten Mr. Hart's number?

8         A    Mr. Hart gave it to me.

9         Q    When did Mr. Hart give it to you?

10        A    I think on the Thursday, on the nineteenth, when my

11   car had been broken into, Mr. Hart -- Mr. Hart saw me getting

12   into my car and he said he saw the guy that broke into it.

13        Q    Had you previously known Mr. Hart?

14        A    No, ma'am.

15        Q    And had you spoken to Mr. Hart before calling him on

16   the twenty-first?

17        A    No, ma'am.

18        Q    So you contacted Mr. Hart and you asked him to come

19   to the Twenty-Eighth Precinct?

20        A    I told him that the sergeant wanted to speak to him

21   in the Twenty-Eighth Precinct.

22        Q    And you told him that they had the guy?

23        A    I think they had the guy.  That's all.

24        Q    Had Mr. Hart previously given you a description of

25   the guy?

Joanne Fleming

 

# New York City Police Department
## Omniform System – Arrests

| RECORD STATUS: ARR PRC CMPL | Arrest ID: M09626813 - M |
|---|---|

| Arrest Location: FRONT OF 533 MANHATTAN AVENUE | Pct: 028 |
|---|---|

**Arrest Date:** 03-21-2009  Processing Type: ON LINE

**Time:** 07:37:00   DCJS Fax Number: MO021778

Sector: I    Special Event Code: -

DAT Number: 0

Stop And Frisk: NO    Return Date: 0000-00-00

Serial #: 0000-000-00000

## ARREST DATA - COMPLAINT NOT REQUIRED

Jurisdiction: NYPD    **NYC School Safety Data:**  **NYC Transit Data:**
Premises: STREET    On School Property:    Station:
Location Within: PUBLIC SIDEWALK    School Type:    Line #:
Occur.Date/Time: 2009-03-21 - 07:32    School Num:    Location:
**NYC Housing Development:**    School Name:

Offense Location: FRONT OF 533 MANHATTAN AVENUE   Borough: MANHATTAN

| CHARGES: | Arrest #: M09626813 |
|---|---|

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 220.50 01 | M | A | 1 | CRIM USE DRUG PAR-2ND:DILUENTS |
| #02 | No | PL 220.03 | M | A | 1 | CRIM POSS CONTRL SUBST-7TH |
| #03 | No | PL 240.20 01 | V | 0 | 1 | DIS/CON:FIGHT/VIOLENT BEHAVIOR |

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

| DETAILS: | Arrest #: M09626813 |
|---|---|

AT T/P/O DEFT. WAS OBSERVED ENGAGED IN VIOLENT OR IN FIGHTING, THREATENIG BEHAVIOR. (SILA) DEFT. WAS IN POSSESION OF CRACK PIPE W/ REBIDUE FROM LEFT PANT POCKET, AND PUSH PIN IN DEFT'S RIGHT PANT POCKET.

## DEFENDANT: BENNETT, ANTHONY L

NYSID #:     Arrest #: M09626813

Nick/AKA/Maiden:    Height: 5FT 10IN    Order Of Protection: NO
Sex: MALE    Weight: 308    Issuing Court:
Race: BLACK    Eye Color: BROWN    Docket #:
Age: 47    Hair Color: BLACK    Expiration Date:
Date Of Birth: 04/02/1961    Hair Length: BALD    Relation to Victim: STRANGER
U.S. Citizen: YES    Hair Style: BALD    Living together: NO
Place Of Birth: NEW YORK    Skin Tone: DARK    Can be identified: YES
Need Interpreter: NO    Complexion: BLOTCHY
Language:
Accent: NO    Soc.Security #: 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
Occupation: UNKNOWN    Gang Affiliation: NO
Physical Condition: APPARENTLY NORMAL  Lic/Permit Type:    Name:
Drug Used: NONE    Lic/Permit No:    Identifiers:

| LOCATION | ADDRESS | CITY | STATE/CNTRY | ZIP | APT/ROOM | PCT |
|---|---|---|---|---|---|---|
| HOME-PERMANENT | 565 MANHATTAN AVENUE | MANHATTAN | NEW YORK | | | 028 |



Need Interpreter: NO
Language:
N.Y.C.H.A Resident? NO

Notified Of Crime
Victim Comp. Law: NO

| LOCATION | ADDRESS | CITY | STATE/COUNTRY ZIP | APT/ROOM |
|----------|---------|------|-------------------|----------|
| HOME-PERMANENT | ███████████ | MANHATTAN NEW YORK | 10027 | |

Phone #:

Action against Victim:

Actions Of Victim Prior To Incident:
UNK

Victim Of Similar Incident:

If Yes, When And Where

## REPORTER: # 1 of 1

Name:
**WALKER,WILLIE**

Complaint #:
**2009-028-01475**

Nick/AKA/Maiden:
Sex/Type: MALE
Race: BLACK
Age: 068
Date Of Birth: 03/31/1940
Need Interpreter: NO
Language:

Gang Affiliation: NO
Name:
Identifiers:

Relationship To Victim:

| Location | Address | City | State/Country Zip | Apt/Room |
|----------|---------|------|-------------------|----------|
| HOME-PERMANENT | ███████████ | MANHATTAN NEW YORK | 10027 | |

Phone #:

## WANTED: # 1 of 1

Name:
**UNK,**

Complaint#:
**2009-028-01475**

Nick/AKA/Maiden:
Sex: UNKNOWN
Race:
Age:
Date Of Birth: UNKNOWN
U.S. Citizen:
Place Of Birth:
Need Interpreter:
Language:
Accent: NO

Height: FTIN
Weight: 0
Eye Color: UNKN
Hair Color: UNKNWN
Hair Length:
Hair Style: UNKNOWN
Skin Tone: UNKN
Complexion: UNKNOWN

S.S. #: 0

Order Of
Protection: NO
Issuing Court:
Docket #:
Expiration Date:
Relation to
Victim: UNKNOWN/NONE
Living together: NO
Can be
Identified: NO

Gang Affiliation:
Name:
Identifiers:

LOCATION ADDRESS CITY STATE/COUNTRY ZIP APT/ROOM HOW LONG? RES. PCT

Phone #:

N.Y.C.H.A. Resident:   N.Y.C. Housing Employee:   On Duty:
Development:   N.Y.C. Transit Employee:

Physical Force:
Weapon Used/Possessed:
Non-Firearm Weapon:
Other Weapon Description:

Gun:
Make:
Caliber:
Color:
Type:
Other/Gun Specify:
Discharged:

Used Transit System:
Station Entered:
Time Entered:
Metro Card Type:
Metro Card Used/Poses:
Card #:

| CRIME DATA | DETAILS |
|------------|---------|
| MODUS OPERANDI | UNK |
| ACTIONS TOWARD VICTIM | UNK |

| CLOTHING | HEADGEAR -UNK -UNKNOWN COLOR |
|---|---|
| CLOTHING | FOOTWEAR -UNK -UNKNOWN COLOR |
| CLOTHING | OUTERWEAR -UNK -UNKNOWN COLOR |
| CLOTHING | ACCESSORIES -UNK -UNKNOWN COLOR |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

## PROPERTY:

Complaint #2009-028-01475

| Lost/Stolen/Found: STOLEN | Business/Personal/Both?: PERSONAL | Owner Identification Num: NONE |
|---|---|---|

| Item | Amt | Article | Description | Serial # | $ Stolen | $ Recovered |
|---|---|---|---|---|---|---|
| 1. | 1. | | IPOD | | 96. | 0. |

TOTALS: STOLEN 96. RECOVERED 0.

| *VEHICLE: # 1 of 1* | VIN: SAJWAOSB69HR11399 | Complaint #: 2009-028-01475 |
|---|---|---|
| Vehicle Was: OTHER | Vehicle Stolen/Attempted Stolen From: | Invoice #: |

| Plate(s): **Vehicle** | Recovered Prior To Alarm: |
|---|---|
| Number of Plates: 0        Year: 2009 | Alarm #: |
| License Plate #: DGE2027    Make: JAGUAR | Precinct: 000 |
| State: NY    Model: | Date: |
| Expires: 0709    Style: SEDAN-4DR | Time: |
| Type:    Color: BLUE | Transmitted By: |
| Ins. Code: | |
| Policy #: ▮▮▮▮▮▮ | |

| Vehicle Condition: | Held For Forfeiture: |
|---|---|

| Reporting/Investigating M.O.S. Name: POF RAMIREZ NERYS | Tax #: ▮▮▮ | Command: 028 PCT | Rep.Agency: NYPD |
|---|---|---|---|
| Supervisor Approving Name: SGT WATSON CYNTHIA | Tax #: ▮▮▮ | Command: 028 PCT | Rep.Agency: NYPD |
| Complaint Report Entered By: PAA BONAPARTE | Tax #: ▮▮▮ | Command: 028 PCT | Rep.Agency: NYPD |
| Signoff Supervisor Name: SGT CRESPO | Tax #: ▮▮▮ | Command: 028 PCT | Rep.Agency: NYPD |



# END OF COMPLAINT REPORT
# # 2009-028-01475



Print this Report

# TRIAL BUREAU THIRTY

| DEFENDANT | AGE | ATTORNEY | Total Arrest | Mis Con | Fel Con | NYSID |
|---|---|---|---|---|---|---|
| ANTHONY BENNETT | 47 | LORIN NATHAN (LAS) | 66 | 47 | 5 | 5306561Y |

| | Date | Time (approx) | Place |
|---|---|---|---|
| OCCURRENCE | 3/19/09 | 05:30 AM | In front of 342 West 121st Street |
| ARREST | 3/21/09 | 07:37 | In front of 533 Manhattan Avenue |

| SUMMARY OF CASE | AUTO STRIPPING BUMP-UP: Defendant breaks car window – D has prior conviction for auto stripping from October 2008. |
|---|---|

| WEAPON | YES: | NO: X | RECOVERED: | | LOADED W/: |
|---|---|---|---|---|---|
| INJURY | YES: | NO: X | TO: | | |
| NARCOTICS | PLACE OF TREATMENT: | | | | |
| | TYPE: | | WEIGHT: (milligrams) | LAB: | FT: |
| SEARCH WARRANT | YES: | NO: X | NUMBER: | | |

| GRAND JURY | DATES: 4/15/09, 4/16/09 | NO. PM 2 | TERM: 4th |
|---|---|---|---|
| | ASSIGNED ADA: Julia London | | |

| Final Charges: PL 165.10 (1) – Auto Stripping in the Second Degree | Approved: |
|---|---|
| | Q4. 18·09 |

## REMARKS

Eyewitness Michael Hart observes D break passenger window of a 2009 Jaguar. Hart knows that CW Willie Walker is the owner of the car. Hart reports to 28th Pct and tells Walker. Two days later, D is observed by AO and Walker, at same location, looking into cars. Walker confronts D and they get into verbal altercation where D ends up raising a cane at Walker. D is arrested. Police do lineup at 28 pct and Hart identifies D. Walker's Ipod and some change missing from the car.

## WITNESSES

| Name | Address | Telephone | Occupation/Employer | DOB | Testify GJ |
|---|---|---|---|---|---|
| MICHAEL HART | ████████ | ████████ | Supervisor at nursing home | | Y |
| WILLIE WALKER | ████████ ████████ | ████████ | Building supervisor | | Y |

| Police Officers | Shield | Tax | Command | Telephone | Testify GJ |
|---|---|---|---|---|---|
| FRANCIS ZITO | 22 | ████████ | 28TH PCT | 212-678-1618 (CMD) | Y |
| BRANDY CHIU | 30970 | ████████ | 28TH PCT | ████████ | N |



P.01

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 1 of 2

THE PEOPLE OF THE STATE OF NEW YORK
-against-

1. Anthony Bennett (M 47)        ECAB #
                                 972695

                                 Defendant.

MISDEMEANOR

Police Officer Francis Zito, shield 00022 of the 028 Precinct, states as follows:

On March 21, 2009, at about 07:32 hours in front of 342 West 121st Street in the County and State of New York, the defendant committed the offenses of:

1.   PL145.00(1)    Criminal Mischief in the Fourth Degree
                    (1 count)
2.   PL220.03       Criminal Possession of a Controlled Substance in the Seventh Degree
                    (1 count)
3.   PL240.20(1)    Disorderly Conduct
                    (1 count)

the defendant intentionally damaged property of another while having no right to do so nor any reasonable grounds to believe that he had such a right; the defendant knowingly and unlawfully possessed a controlled substance; and the defendant, with intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof, engaged in fighting and in violent, tumultuous and threatening behavior.

The offenses were committed under the following circumstances:

Deponent states that deponent is informed by Michael Hart, of an address known to the District Attorney's Office, that informant Hart observed the defendant forcibly break the passenger side window of a 2009 Jaguar, causing said window to shatter.

Deponent states that deponent is informed by Willie Walker, of an address known to the District Attorney's Office, that informant Walker is the custodian of such property and that the defendant did not have permission or authority to damage the property.

Deponent states that deponent observed the defendant behaving in a violent, tumultuous, and threatening manner, as follows: defendant was yelling and screaming, to





1   EXAMINATION BY MS. LONDON:

2        Q.   Good afternoon, Officer Zito.

3   Directing your attention to March 21, 2009, at

4   approximately 7:30 a.m., did you have occasion

5   to make an arrest at that time?

6        A.   Yes, I did.

7        Q.   What were the circumstances

8   leading to that arrest?

9        A.   On that date in particular, I was

10  driving, working in the 2-8 Precinct, driving an

11  unmarked police car.  I observed two males

12  arguing at 7:30 in the morning, cursing and

13  screaming at each other.  Upon approaching the

14  two unknown individuals, Anthony Bennett, which

15  came to be, had his cane raised, looked like he

16  was going to hit the other male.  Finally

17  getting to the location where they both were

18  standing, was trying to break up the situation,

19  which was escalating; broke up both individuals.

20  The defendant Anthony Bennett was still becoming

21  boisterous and verbal.  At that point he was

22  placed under arrest for disorderly conduct.

2 EX M H

HART                                                                                    4

1      (M I C H A E L   H A R T   enters the grand jury

2    room.)

3                           FOREPERSON:  Do you

4           solemnly swear that the evidence

5           you shall give to the grand jury

6           upon this complaint against

7           Anthony Bennett shall be the

8           truth, the whole truth, and

9           nothing but the truth, so help

10          you God?

11                          THE WITNESS:  Yes.

12                          GRAND JURY WARDEN:  Have a

13          seat, Mr. Hart.  Can you state

14          your name and county of residence.

15                          THE WITNESS:  Michael Hart;

16          New York City.

17   EXAMINATION BY MS. LONDON:

18          Q.   Good afternoon, Mr. Hart.

19   Directing your attention to March 19, 2009, at

20   approximately 5:10 a.m., where were you at that

21   time?

22          A.   I was home in my apartment.

3EX

1          Q.    And is that in New York County?

2          A.    Yes.

3          Q.    Briefly describe for the members

4     of the grand jury what happened at that time.

5          A.    I was brushing my teeth, looking

6     out the window, and I saw the defendant walking

7     up the block and hit a Jaguar window.

8          Q.    What did you do?  When you say you

9     saw him hit this window, what exactly do you

10    mean?

11         A.    He was walking with a limp and

12    then he just took something and just hit the

13    passenger side of the vehicle.

14              MS. LONDON:  Let the record

15              reflect that --

16              (Ms. London confers with

17              Mr. Nasar.)

18         Q.    Could you see that the window was

19    broken at that time?

20         A.    No.

21         Q.    So what did you do after you saw

22    the person hit the Jaguar window?

4 EX

        A.    I tried to call 911, but, if
you've ever tried to call 911, they give you the
run around.  So I proceeded to get dressed and
get ready for work.  So I got in my vehicle and
I drove down the block and I saw the defendant
again.

        Q.    What did you do --  What street
was this on you saw this happen?

        A.    121st Street and Manhattan Avenue.

        Q.    What did you do after you saw the
person you saw hit the window again?

        A.    I went around the block and I went
to the 28th Precinct and notified them of the
situation.

        Q.    So, just to clarify, you saw the
person hit the car window, and then you got in
your car and drove towards the precinct and you
saw that person again?

        A.    Yes.

        Q.    And then you went to the 28th
Precinct?

        A.    Yes.

5-EX

① Q.   And what did you do there?

② A.   Filed a complaint.

3  Q.   Did you have an opportunity to view the person you previously saw breaking the car window in a line-up on March 21st?

⑤ A.   Yes.

6  Q.   And was that March 21, 2009, at approximately 3:00 p.m., inside the 28th Precinct?

⑩ A.   Yes.

11 Q.   Did you point the defendant out?

12 A.   Yes, I did.

13 Q.   What number did you point out?

14 A.   Two.

15 Q.   And the person you identified as number two -- The person who had number two was the person you saw break the window?

18 A.   Yes.

19 Q.   And at the line-up there was a group of people, each of whom had a separate number; is that correct?

22 A.   Yes.

## APS DA DATASHEET

| | Defendant #1<br>Anthony Bennett | | Defendant #2 |
|---|---|---|---|
| **Bail Rec:** | | **Bail Rec:** | |
| **Reasons:** ~XLM<br>~XMA-H | | **Reasons:** | |
| **Bail Req:** P|K | **Bail Set:** ROR | **Bail Req:** | **Bail Set:** |

### D BREAKS CAR WINDOW / DIS CON & CRACK PIPE

- Eyewitness Michael hart observed D break the passenger window of a 2009 Jaguar
- Hart knows that Willie Walker is owner
- AO obs D looking into vehicles
- AO obs D looking into a red Jeep
- Willie Walker approaches D and a verbal altercation begins
- Ao obs D raise the cane D is holding and AO obs that it appeared like the D was going to hit Walker
- Police do lineup at 28 PCT and Hart IDs D

| Statements △1: | Statements △2: |
|---|---|
| | |

| ID △1: | ID △2: |
|---|---|
| On 3/21/09 aa 15:00  iso 28 PCT 1 EW ID'd D in a lineup | |

| Date:<br>3/22 | Part:<br>A24 | Special Instructions | Notice<br>Checklist | D<br>E<br>F<br>1 | D<br>E<br>F<br>2 |
|---|---|---|---|---|---|
| **ADA:** Cheng | | **Arraignment Notes:** | 710.30(1A) | | |
| **Judge:** Schaffer | | | 710.30(1B) | ☑ | |
| **Court Reporter:** Tejada | | | 190.50(5A) | | |
| | | | Cross G.J | | |
| **Adj. Date:** ~~~~ | **Adj Part:** A | | OTP | | |
| | | | 170.20 | | |
| | | | Request TOP | | |
| **Reasons:** CRB ~~~~ x3 | | | F & S Supp Dep. | | |
| | | | 450.10 48 Hour | | |
| | | | 450.10 15 Day | | |
| | | NO O)R | Surety ____ | | |
| | | | F & S Field Test | | |
| **△/C #1:** Nathan(LAS) | | **△/C #2:** | | | |